**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,          Criminal Case No. 11-20052
                                  Civil Case No. 16-13974
                                  HON. DENISE PAGE HOOD

v.

MEHRAN JAVIDAN (D-1),

      Defendant-Petitioner.

_____/

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET**
**ASIDE OR CORRECT SENTENCE [#204];**
**ORDER DENYING AMENDED MOTION UNDER 28 U.S.C. § 2255 TO**
**VACATE, SET ASIDE OR CORRECT SENTENCE [#217];**
**ORDER DISMISSING CIVIL CASE NO. 16-13974;**
**and**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**

**I. BACKGROUND**

      Defendant Mehran Javidan ("Javidan") engaged in a Medicare fraud scheme

from March 2009 through November 2010. In mid-2008, Javidan approached her

friend Muhammed Shahab ("Shahab") for help entering the home-health business.

Shahab was at the time involved with Patient Choice and All American, two

fraudulent home-health agencies that were eventually shut down after federal

authorities executed a search warrant in September 2009. Javidan shadowed

Shahab and later engaged in her own fraudulent scheme, modeled after Shahab's

1

scheme.  In November 2008, Javidan purchased Acure Home Care ("Acure") with Shahab and others.  Javidan was part-owner and managed Acure, handling the daily operations.  Javidan signed Acure's Medicare application and maintained payroll; was the only person with signatory authority on Acure's bank account; and was solely responsible for Medicare billing at Acure.

On April 2, 2013, a jury found Javidan guilty on one count of Conspiracy to Commit Health Care Fraud, three counts of Health Care Fraud, three counts of False Statements Relating to Health Care Matters, and one count of Conspiracy to Pay Health Care Kickbacks.  (Doc # 89)  The jury found Javidan not guilty on one count of Health Care Fraud and one count of False Statements Relating to Health Care Matters.  *Id.*  The jury did not reach a verdict on one count of Health Care Fraud.  *Id.*

Javidan was sentenced to a term of 65 months of imprisonment, followed by a term of 3 years of supervised release, and $2,215,186.45 in restitution.  (Doc # 129)  Javidan filed a Notice of Appeal on November 22, 2013.  (Doc # 126)  On December 23, 2015, the Sixth Circuit issued an Opinion affirming Javidan's conviction and sentence.  (Doc # 192)  The Sixth Circuit issued a Mandate on February 5, 2016.  (Doc # 194)

On November 8, 2016, Javidan filed the instant *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on the basis of (1) alleged

ineffective assistance of counsel, and (2) retroactive application of Amendment 794 to Section 3B1.2 of the Federal Sentencing Guidelines.  (Doc # 204)  The Government filed a Response on December 15, 2016.  (Doc # 209)  On February 27, 2017, Javidan filed an Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 *pro se* which raised some new issues as well as many of the same issues as her previous Motion.   (Doc # 217)  On March 16, 2017, the Government filed a Response.  (Doc # 222)  Javidan filed a Reply on May 2, 2017.  (Doc # 234)  Javidan filed an additional and untimely Reply on May 22, 2017.  (Doc # 236)

## II. ANALYSIS

Section 2255 authorizes a federal prisoner to move the district court to vacate a sentence.  28 U.S.C. § 2255(a).  Motions brought under Section 2255 are subject to a one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996, generally running from "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2253(f)(1); *Dunlap v. United States*, 250 F.3d 1001, 1004-05 (6th Cir. 2001).  As an initial matter, the Court notes that Javidan's Motion was timely filed.

In order to prevail on a Section 2255 motion, the movant must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire

proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## A. Ineffective Assistance of Counsel

Javidan argues that Defense Counsel was ineffective because she (1) failed to request a dismissal or mistrial and failed to argue a single large conspiracy; (2) failed to adequately investigate and interview key witnesses; (3) failed to hire an expert on Medicare billing policies; (4) failed to challenge the loss amount; (5) failed to file a mistrial motion based on a three-week trial recess; (6) failed to review the Presentence Report with Javidan; (7) failed to review a plea offer with Javidan; (8) failed to challenge the sentence enhancement for role; and (9) failed to challenge the sentence enhancement for sophisticated means. The Court will address each of these arguments in turn.

Under the Sixth Amendment, a defendant has a right to "have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id.* "There is a strong presumption that legal counsel is competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). In addition, a "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant bears the burden of showing that counsel was so deficient and that prejudice resulted from counsel's errors. *Id.* at 686-87.

### 1. Failure to Request a Dismissal or Mistrial and Failure to Argue Single Conspiracy

Javidan argues that Defense Counsel was ineffective because she failed to request a dismissal or mistrial and failed to argue at trial that Shahab's scheme at Patient Choice and All American was a single large conspiracy that included the scheme at Acure. Javidan asserts, without any evidence, that Shahab fully funded

and controlled Acure. Javidan argues that Defense Counsel should have filed a motion to have the case dismissed because Shahab was the mastermind and leader of a single conspiracy.

The Government responds that it was reasonable for Defense Counsel not to file a motion for dismissal or mistrial because Javidan's argument has no merit. The Government argues that the fact that Shahab worked with other individuals to open different fraudulent home health care agencies does not make the Acure conspiracy part of one large scheme. The Government further argues that Javidan cannot satisfy the second prong of *Strickland* because her argument that she is a mere victim of Shahab is factually incorrect, contradicted by all of the evidence, and has been previously rejected by the jury, this Court at sentencing, and the Sixth Circuit on direct appeal.

At trial, witness testimony, bank records, and Medicare records indicated that Javidan was part-owner of Acure; that Javidan managed Acure and handled its daily operation; that Javidan signed Acure's Medicare application and maintained payroll; that Javidan was the only person with signatory authority on Acure's bank account; and that Javidan was responsible for Medicare billing at Acure. The record shows that Defense Counsel argued at trial that Shahab was the mastermind behind the scheme; that Shahab's people were running Acure and doing the Medicare billing at Acure; that Javidan trusted Shahab and was not aware of the

fraud; that Javidan did not think that she had the authority to question Shahab's instructions; and that Javidan was not profiting nearly as much from Acure as Shahab was. *See*, *e.g.,* Doc # 185, Pg ID 7027-28, 7041-42, 7045, 7061, 7064, 7068. Unfortunately for Javidan, the jury rejected these arguments. Witness testimony, bank records, and Medicare documents showed that it was Javidan who directed the fraud at Acure, and that Javidan continued to run Acure alone after September 2009.

At sentencing, this Court considered Defense Counsel's arguments that Shahab was the leader of the empire that should be looked at as a whole; that Javidan was just a puppet owner controlled by Shahab; and that Javidan did not know what was going on and was not a manager. *See*, *e.g.,* Doc # 179, Pg ID 6363, 6366, 6364, 6394, 6436. However, the Court found, based on the evidence presented at trial, that Javidan was an owner of Acure; that she did direct the Acure fraud at points in time; and that she really minimized her involvement substantially throughout the trial. *See id.* at 6434, 6466.

On appeal, the Sixth Circuit rejected Co-Defendant Vishnu Meda's argument that the Acure conspiracy and the Patient Choice/All American conspiracy were in fact a single conspiracy (for purposes of Meda's double jeopardy argument). Doc # 193, Pg ID 7234 (citing *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983)). The court found significant that the Acure

conspiracy took place during a different time period as the Patient Choice/All American conspiracy (with only a small time overlap of six months). The court also found that the identity of the central figures were different in each conspiracy.

> [Javidan] was the central character in the Acure conspiracy, as she ran the day-to-day operations and made all the Medicare decisions. Unlike at Patient Choice and All American, Shahab was not actively involved in Acure's business. He was merely a part owner. Moreover, unlike Shahab, who played a passive role in the Acure conspiracy, Javidan played no role at all in the Patient Choice/All American conspiracy.

*Id.* at 7233. Additionally, the Sixth Circuit found that the overt acts charged in each conspiracy were different. *Id.* at 7234 ("Further illustrating this point is the fact that when Patient Choice and All American were shut down after federal authorities served a search warrant on their respective business premises, Acure continued to operate.").

The Court concludes that Javidan has not met her burden of showing that Defense Counsel's performance with regards to the issue of a single large conspiracy with Patient Choice and All American was constitutionally deficient. Defense Counsel did make the arguments that Javidan makes in her instant Motion, and those arguments were considered and rejected by the jury, this Court at sentencing, and the Sixth Circuit on appeal. In light of the significant evidence showing that Javidan owned Acure, directed the fraud at Acure, and played no role in the Patient Choice/All American conspiracy, the Court finds that Defense

Counsel made a strategic decision not to request a dismissal or a mistrial based on the theory of a single large conspiracy. The Court further concludes that Javidan has not met her burden of showing that there is a reasonable probability that, but for Defense Counsel's unprofessional errors, the result of the proceeding would have been different, given that Javidan's arguments that Shahab controlled Acure and that she was just a puppet owner controlled by Shahab were considered and rejected at each stage of this case.

## *2. Failure to Investigate and Interview Witnesses*

### i. Acure's Biller

Javidan asserts, without detail or much argument, that Defense Counsel was ineffective because she failed to interview Acure's biller.

The Government responds that Acure's biller, Maseer Ansari, testified for over three days at trial. The Government argues that Javidan's argument fails because she has not identified any other biller, provided any evidence that another unspecified biller was willing to testify on her behalf, or detail how the proposed testimony would have differed from Ansari's.

The Court concludes that Javidan has not met her burden of showing that Defense Counsel's performance with regards to interviewing Acure's biller(s) was constitutionally deficient. The record shows that Acure's biller, Maseer Ansari,

did indeed testify on Javidan's behalf (Doc # 172; Doc # 185), and Javidan does not identify any other biller or detail any proposed testimony.

<u>ii. Medicare Beneficiaries</u>

Javidan argues that Defense Counsel was ineffective because she failed to interview Medicare beneficiaries that received appropriate and legitimate services from Acure. Javidan asserts, without further detail, that Defense Counsel "failed to fully investigate additional witnesses that might have been exculpatory."

The Government responds that Javidan cannot satisfy the first prong of *Strickland* because she has failed to specifically identify any witnesses, detail their testimony, or describe how such testimony would have been credible in light of the overwhelming evidence that Acure was a fraud. The Government further argues that Javidan cannot satisfy the second prong of *Strickland* because the provision of services to some, but not all, beneficiaries is not a defense to the counts of conviction; and because Javidan has not shown that any testimony would have significantly affected the verdict or undermined confidence in the outcome.

The Court concludes that Javidan has provided no argument and cannot show that that there is a reasonable probability that Defense Counsel's actions as to the unspecified Medicare beneficiaries prejudiced the defense such that the result of the proceeding would have been different. Again, Javidan does not identify any specific Medicare beneficiary who received legitimate services from Acure or

detail any proposed testimony. Javidan does not argue and could not show that any testimony from some unspecified Medicare beneficiaries who received legitimate services from Acure would provide a defense to conspiracy to commit health care fraud, substantive health care fraud, the false statement count, or conspiracy to pay health care kickbacks. Javidan does not explain how or why the jurors would have credited the testimony from any unspecified Medicare beneficiaries, especially in light of the fact that the jurors disregarded testimony on the subject of legitimate services from Maseer Ansari and Rhunelle Adams. And Javidan does not explain how the testimony from any unspecified Medicare beneficiaries would have overcome the significant evidence against her presented at trial.

### iii. The Contract

Javidan argues that she was prejudiced when Defense Counsel "misplaced the vital contract that was developed by prior private counsel in order to secure the grounds of the partnership," which "clearly took away liability imposed on the defendant. The contract outlined the responsibilities of Acure for the defendant and the clear role of Shahab."

The Government responds that the Acure partnership agreement would not provide a defense.

The Court concludes that Javidan has provided no argument and cannot show that that there is a reasonable probability that Defense Counsel's actions as to

the Acure partnership agreement prejudiced the defense such that the result of the proceeding would have been different. Javidan does not submit any partnership agreement or explain how such an agreement would have helped her case where the evidence at trial established that Javidan committed Medicare fraud, made false statements, and paid illegal health care kickbacks.

### 3. Failure to Hire Expert on Medicare Billing Policies

Javidan argues that Defense Counsel was ineffective because she failed to hire an expert on Medicare billing policies. Javidan asserts that if an expert had explained Medicare services to the jury, the jury would have been able to make a reasonable conclusion as to intended loss.

The Government responds that Defense Counsel's decision not to hire an expert was tactical and strategic. The Government argues that Defense Counsel was not ineffective for failing to retain an expert to testify that the billed amount is not a suitable proxy for intended loss because in this case the loss was determined not based on the billed amount, but rather on the $2,219,869.73 that Medicare actually paid to Acure during the course of the conspiracy reflected in bank records.

A review of the record shows that the amount of loss was determined using amounts paid by Medicare to Acure, and not amounts billed by Acure. *See*, *e.g.,* Doc # 115-2; Doc # 115-3; Doc # 179, Pg ID 6422, 6426, 6431, 6445-46, 6448-49,

6454-55. Javidan does not explain how the proposed expert testimony on the unsuitability of billed amounts as a proxy for intended loss would have made a difference in light of the fact that the loss in this case was not determined based on billed amounts, but rather on bank records.[1]  Javidan does not explain how any expert testimony on this subject would have overcome the evidence against her on the amount of loss presented at trial.  *See*, *e.g.,* Doc # 168, pp. 14-16, 38-41, 72-75, 127-30.  The Court concludes that Javidan cannot show that that there is a reasonable probability that Defense Counsel's actions as to an expert on this subject prejudiced the defense such that the result of the proceeding would have been different.

Further, Javidan does not explain how any proposed expert testimony on this subject would have been different from the lengthy testimony of Maseer Ansari, Acure's biller, who testified on this precise subject.  *See* Doc # 172, Pg ID 5771-84, 5797-98, 5809-11, 5828-33, 5835-36; Doc # 185, Pg ID 6868-69, 6878, 6880-81, 6883-87, 6890-92, 6895-97.  Although the jury rejected Ansari's testimony, the Court finds that Defense Counsel's decision not to hire an expert on this same subject, when evaluated from Defense Counsel's perspective at the time of the

---

[1] In her second Reply, Javidan asserts that Medicare was "paid back" each time a Request for Anticipated Payment ("RAP") was cancelled, and that Defense Counsel should have reviewed all claims and "made a determination of the RAP payments from that."  However, the total loss in this case was determined based not on billed amounts or RAPs, but rather based on bank records showing Medicare payments to Acure, which the evidence showed already incorporated every cancelled RAP, offset, and recoupment on the part of Medicare.

alleged error and in light of all the circumstances, was strategic and reasonable. Javidan has not met her burden of showing that Defense Counsel's performance was constitutionally deficient in this regard.

### 4. Failure to Challenge Loss Amount

#### i. 10% Interest in Acure

Javidan argues that Defense Counsel was ineffective because she failed to challenge the loss amount based on Javidan being merely an employee with a 10% interest in Acure. Javidan argues that she was at most responsible for only 10% of the loss.

The Government responds that under Section 2B1.1 of the Federal Sentencing Guidelines, the loss is calculated based on loss, not gain, and the fact that Javidan would only gain 10% of the loss is not grounds to reduce the amount of loss.

Section 2B1.1 provides that the loss is the greater of actual loss or intended loss. U.S.S.G. § 2B1.1 cmt. n.3(A).

> In a case in which the defendant is convicted of a Federal health care offense involving a Government health care program, the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss, i.e., is evidence sufficient to establish the amount of the intended loss, if not rebutted.

*Id.* at § 2B1.1 cmt. n.3(F)(viii).

As the Government correctly notes, that Javidan had only a 10% interest in Acure suggests not that she is responsible for only 10% of the loss, but rather that she intended to cause the total amount of the loss in order to reap 10% of the ill-gotten gains. The Court concludes that Javidan cannot show that that there is a reasonable probability that Defense Counsel's actions as to challenging the loss amount based on Javidan's 10% interest in Acure prejudiced the defense such that the result of the proceeding would have been different.

## ii. Legitimate Services

Javidan also argues that Defense Counsel was ineffective because she failed to challenge the loss amount at sentencing by introducing specific evidence of patients who received legitimate services. Javidan argues that Defense Counsel was ineffective because she also failed to argue that the restitution amount should have been offset by the fair market value of legitimate services that Acure rendered. In her Reply, Javidan argues that Defense Counsel was ineffective for failing to hire an expert to review the claims submitted to Medicare by Acure in order to discern good billing and determine "what amount of the 2,219,869.73 was actually legitimate services."

The Government responds that Javidan has not met her burden because she does not identify any additional evidence that Defense Counsel could have adduced in support of her claim or any patient who received legitimate services.

The Government further argues that Defense Counsel's performance as to litigating loss was reasonable. The Government also argues that Javidan does not contend that Acure provided a sufficient amount of legitimate services to change her sentencing guideline range.

Once again, Javidan provides no specific information to support her claims. She does not identify any patient who received legitimate services and could have testified on her behalf. She does not identify any additional evidence that Defense Counsel could have presented or that an expert could have explained to further reduce the loss amount. The Court notes that, during the sentencing hearing, Defense Counsel specifically stated that she presented as much testimony at trial as possible to show that there were real patients and that Javidan thought they were real patients. (Doc # 179, Pg ID 6445) Javidan did not object to her attorney's statement at the time. The evidence presented at trial suggests that Defense Counsel's statement that she presented as much evidence as she could was true because Acure was not actually providing legitimate services to a majority its patients. Indeed, the Court found that that the Government more than met its burden in showing that Acure was entirely a fraud. Id. at 6371.

The records shows that Defense Counsel challenged the loss amount (as to sentencing, forfeiture, and restitution) on the basis of legitimate services provided by Acure in her sentencing memorandum (Doc # 110, Pg ID 735-38),

supplemental sentencing memorandum (Doc # 115), and oral argument during the sentencing hearing. (Doc # 179, Pg ID 6408-10, 6417-18) Defense Counsel's arguments that the Government had not sufficiently proved that services rendered were not legitimate resulted in a reduction of the loss amount based on counts on which the jury did not convict. *Id.* at 6445, 6448-49. Indeed, during the sentencing hearing, this Court noted: "Ms. Javidan, your Counsel has been very zealous in presenting your claims to the Court and I appreciate all the documents that she sent to me . . ."—referring to documents precisely about this issue. *Id.* at 6472. Under these circumstances, the Court finds that Defense Counsel's performance was reasonable.

During the sentencing hearing, Defense Counsel argued that the Court should reduce the loss amount by $700,000.00-$800,000.00 based on the testimony of Maseer Ansari, Acure's biller. The Court noted that even if the Court were to find that Ansari's testimony justified such a reduction, the loss amount would still be over one million dollars such that Javidan would still receive the 16-level increase pursuant to Section 2B1.1(b)(1)(I) of the Federal Sentencing Guidelines. In her instant Motion, Javidan provides no indication that Acure rendered a sufficient amount of legitimate services—at least $1,215,186.46 worth of legitimate services to qualified homebound Medicare beneficiaries—such that she should not have received the 16-level increase.

The Court concludes that Javidan has not met her burden of showing that Defense Counsel's performance was constitutionally deficient with regards to introducing additional specific evidence of patients who received legitimate services from Acure or introducing expert testimony to discern good billing. The Court further concludes that Javidan cannot show that that there is a reasonable probability that Defense Counsel's actions as to challenging the loss amount on this basis prejudiced the defense such that the result of the proceeding would have been different.

### 5. Failure to File Mistrial Motion Based on Three-Week Recess

Javidan argues that Defense Counsel was ineffective because she failed to file a mistrial motion based on a three-week trial recess. Javidan asserts that there is no way to determine whether this delay impaired the jurors' memories.

The Government responds that Javidan's argument lacks merit because a motion for a mistrial would not have been successful. The Government further argues that there is no evidence that the recess had any effect on the result of the jury trial.

In *United States v. Van Dyke*, the district court scheduled the defendant's case on twenty three days over a fifty five day period. 605 F.2d 220, 226 (6th Cir. 1979). During the trial, there were several recesses—a ten-day recess, a three-day recess, and five recesses of one day each sprinkled throughout the trial. *Id.* The

Sixth Circuit found no prejudicial error requiring reversal of the defendant's conviction.

> A District Court has wide discretion in the scheduling of a trial which should not be disturbed in the absence of manifest abuse which does not exist here. . . . The number of interruptions alone does not establish actual prejudice. Aside from inconvenience shared by both parties in order to comply with the Court's schedule, Appellant has failed to demonstrate any actual prejudice that could have resulted to him from the scheduling.

*Id.* at 227.

In this case, the Court recessed trial for a period of two and a half weeks from February 15, 2013 to March 5, 2013, which interrupted the Government's case-in-chief. Javidan has failed to come forth with any indication of actual prejudice that could have resulted to her from the scheduling of the trial. The record shows that Defense Counsel conducted comprehensive cross examinations and recross examinations. The inconvenience of the recess was shared by both parties. There is no indication that the jury forgot testimony, but even if the jury did forget some testimony, as the court noted in *Van Dyke*, it is equally probable that the jury forgot evidence favorable to the Government, whose case in chief was interrupted, as it is probable that the jury forgot evidence favorable to Javidan.

The Court concludes that Defense Counsel's performance with regards to any motion for a mistrial on this basis was reasonable because such a motion would not have been successful. The Court further concludes that Javidan cannot show

that that there is a reasonable probability that Defense Counsel's failure to file a motion for a mistrial on this basis prejudiced the defense such that the result of the proceeding would have been different.

### 6. Failure to Review PSR

Javidan argues that Defense Counsel was ineffective because she failed to review the Presentence Report ("PSR") with Javidan. Javidan asserts that she therefore "did not have any legal guidance to know which issues to object to."

The Government responds that Javidan's argument is belied by the record at sentencing. The Government further argues that Javidan cannot show prejudice because she does not identify any objection that Defense Counsel failed to make, or make any argument that such an objection would have changed the result at sentencing.

During the sentencing hearing, the Court asked Defense Counsel if she had received the PSR. (Doc # 179, Pg ID 6350) Defense Counsel responded, "I have and I reviewed it with my client as well as the objections, I reviewed those with her, and the addendum." *Id.* Javidan did not dispute Defense Counsel's representation. The record also shows that Defense Counsel raised several objections to the PSR, including objections related to the amount of loss, role enhancement, sophisticated means enhancement, reduction for acceptance of responsibility, and factors warranting departure from the sentencing guidelines.

(Doc # 110) Javidan does not identify any objection that Defense Counsel failed to make, or make any argument that such an objection would have changed the result at sentencing.

The Court concludes that Defense Counsel's performance with regards to reviewing the PSR and objections was reasonable. The Court further concludes that Javidan cannot show that that there is a reasonable probability that Defense Counsel's failure to review any aspect of the PSR prejudiced the defense such that the result of the proceeding would have been different.

### 7. Failure to Review Plea Offer

Javidan argues that Defense Counsel was ineffective because Javidan believes (without any support or evidence) that the Government made her a plea offer, which Defense Counsel withheld, resulting in additional time imprisoned.

The Government responds that Javidan has not made the requisite factual showing for an evidentiary hearing. The Government argues that Javidan does not assert, even without sworn facts in support, that Defense Counsel actually received a plea offer that was not communicated. The Government further argues that Javidan has not demonstrated a reasonable probability that she would have accepted a plea offer and that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.

The *Strickland* test applies in the plea-bargaining context.  *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003).  In *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that to establish an ineffective assistance of counsel claim in the plea-bargaining process, the defendant must show not only that counsel was deficient, but that the outcome of the plea-bargaining process would have been different with competent advice. *Lafler*, 132 S. Ct. at 1384 (citing *Frye*, 132 S. Ct. at 1388-89).  In *Frye*, the Supreme Court held that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.  132 S. Ct. at 1408.  Defense counsel does not render the effective assistance the Constitution requires when defense counsel fails to convey a plea offer to his client or allow the client to consider a plea offer.  *Id.*  The defendant must then show prejudice, a reasonable probability that the earlier plea offer would have been accepted by the defendant, had the defendant been informed of the plea offer.  *Id.* at 1409.  A defendant must also demonstrate that the prosecution would not have canceled the offer or that the trial court would have accepted the plea.  *Id.*  The defendant must show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.  *Id.*

According to the Government, Defense Counsel rejected a plea offer, stating that Javidan and her husband both believed that Javidan should go to trial. Javidan does not present any sworn statement or put forth any factual basis for her belief that Defense Counsel received a plea offer that she failed to communicate to Javidan. Javidan does not make any argument that she was prejudiced, that she would have accepted the plea offer, that she would have made the factual admissions required for a plea to be accepted, that the plea would have been entered, or that the end result would have been more favorable to Javidan. Indeed, Javidan has consistently denied her guilt from the start of the case all the way to her instant Motion and Replies.

The Court concludes that Javidan has not met her burden of showing that Defense Counsel's performance with regards to any plea offers was constitutionally deficient, or that there is a reasonable probability that any failure on Defense Counsel's part with regards to any plea offers prejudiced the defense such that the result of the proceeding would have been different.

### 8. Failure to Challenge Sentence Enhancement for Role

Javidan argues that Defense Counsel was ineffective because she failed to effectively challenge the sentence enhancement for leadership role in the offense. Javidan goes on to rehash her arguments that she is a mere victim of Shahab, the

mastermind of the scheme—arguments which Javidan contends that Defense Counsel failed to make effectively.

The Government responds that Defense Counsel was not ineffective because she objected to the role enhancement in her sentencing memorandum and during the sentencing hearing, making the precise arguments that Javidan makes in the instant Motion. The Government further argues that Javidan cannot show prejudice because these arguments would not have altered the Court's conclusion that Javidan was a leader or organizer of the Acure fraud scheme.

The record shows that Defense Counsel objected to the role enhancement in her sentencing memorandum, arguing that Shahab clearly managed the enterprise, and that Javidan's sole true management was to try to correct Shahab's wrongs. (Doc # 110, Pg ID 740) The record also shows that Defense Counsel presented oral argument challenging the role enhancement during the sentencing hearing. Defense Counsel argued that Shahab was the "absolutely clear leader of the enterprise;" that Shahab's people were managing Acure; that Javidan was not aware of the fraud; and that Javidan was under Shahab's control. (Doc # 179, Pg ID 6363-65, 6384-85) The Court finds that Defense Counsel made the same arguments that Javidan makes in her instant Motion, and Defense Counsel's performance with respect to challenging the role enhancement was reasonable.

The Court further finds that Javidan has not met her burden of showing that there is a reasonable probability that any failure on Defense Counsel's part with respect to challenging the role enhancement prejudiced the defense such that the result of the proceeding would have been different. The Court, as well as the jury and the Sixth Circuit on appeal, rejected the precise arguments that Javidan makes in her instant Motion because the evidence at trial showed that Javidan was part-owner of Acure; that Javidan managed Acure and handled its daily operation; that Javidan signed Acure's Medicare application and maintained payroll; that Javidan was the only person with signatory authority on Acure's bank account; that Javidan was responsible for Medicare billing at Acure; and that Javidan continued to run Acure alone after September 2009.

### 9. Failure to Challenge Sentence Enhancement for Sophisticated Means

Javidan argues that Defense Counsel was ineffective because she failed to challenge the sentence enhancement for sophisticated means. Javidan asserts that Defense Counsel failed to present any evidence to show that Javidan had a limited knowledge of the business, and that the sophisticated means were established by Shahab and utilized by him and his people.

The Government responds that Defense Counsel did challenge the sophisticated means enhancement in her sentencing memorandum and during the sentencing hearing. The Government further argues that Javidan cannot show

prejudice because her arguments would not have altered the Court's conclusion regarding the sophisticated means enhancement.

The record shows that Defense Counsel objected to the sophisticated means enhancement in her sentencing memorandum, arguing that Javidan did not devise this scheme, and that the enhancement does not apply to an "unwitting agency 'puppet' owner" such as Javidan. (Doc # 110, Pg ID 739-40) The record also shows that Defense Counsel presented oral argument challenging the sophisticated means enhancement during the sentencing hearing. Defense Counsel argued that all of the sophisticated means were Shahab's in their origination, and that these sophisticated means were set up, taught, and ordered by Shahab. (Doc # 179, Pg ID 6366, 6384) The Court finds that Defense Counsel did challenge the sophisticated means enhancement, contrary to Javidan's assertions, and Defense Counsel's performance with respect to challenging the sophisticated means enhancement was reasonable.

The Court further finds that Javidan has not met her burden of showing that there is a reasonable probability that any failure on Defense Counsel's part with respect to challenging the sophisticated means enhancement prejudiced the defense such that the result of the proceeding would have been different. The Court rejected the precise arguments that Javidan makes in her instant Motion because the sophisticated means enhancement does not require that the defendant subject to

the enhancement be the one who thought up or created the sophisticated means, just that she used the sophisticated means.  (Doc # 179, Pg ID 6443)  Here, the evidence showed that Javidan engaged in sophisticated steps (before and after Shahab was forced out of Acure in late 2009) such as applying for and maintaining the Acure Medicare provider number, controlling the Acure bank account, paying recruiters, paying doctors for referrals, and directing staff in how to falsify files (including the files that Medicare sought for auditing purposes).

### B. Retroactive Application of Amendment 794 to Section 3B1.2

Lastly, Javidan argues that she is entitled to a reduction in sentence based on retroactive application of Amendment 794 to Section 3B1.2 of the Federal Sentencing Guidelines because of her minimal role in the conspiracy.

The Government responds that Javidan's argument is procedurally improper. The Government also argues that Javidan is not entitled to a reduction in sentence based on a mitigating role adjustment because Javidan is not substantially less culpable than the average criminal participant.

Amendment 794 added the following language to Application Note 3(C) to Section 3B1.2 of the Federal Sentencing Guidelines.

In determining whether to apply subsection (a) or (b), or an intermediate [mitigating role] adjustment, the court should consider the following non-exhaustive list of factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C). Amendment 794 took effect on November 1, 2015, after Javidan was sentenced; however, the Sixth Circuit recently held that it applies retroactively. *United States v. Carter*, 662 F. App'x 342, 349 (6th Cir. 2016).

As discussed above, the evidence at trial showed that Javidan was part-owner of Acure, an enterprise that this Court found to be entirely fraudulent; that Javidan managed Acure and handled its daily operation; that Javidan signed Acure's Medicare application and maintained payroll; that Javidan was the only person with signatory authority on Acure's bank account; that Javidan was

responsible for Medicare billing at Acure; and that Javidan continued to run Acure alone after September 2009. This led the Court to apply a four-level enhancement for leadership role, which the Sixth Circuit affirmed, noting that "Javidan had all the indicia of Acure's leader/organizer in its Medicare fraud scheme." (Doc #193, Pg ID 7250) Even if the Court were to treat Javidan's argument as a proper motion for a reduction of sentence under 18 U.S.C. § 3582(c)(2), the Court concludes that Javidan is not entitled to a reduction in sentence based on a mitigating role adjustment because Javidan is not substantially less culpable than the average criminal participant.

### C. Summary

Based on the above analysis, the Court finds that Javidan failed to show that Defense Counsel's performance was deficient and/or prejudiced the defense under the *Strickland* test. The Court further finds that Javidan failed to show that she is entitled to a reduction in sentence based on retroactive application of Amendment 794 to Section 3B1.2 of the Federal Sentencing Guidelines. Javidan is not entitled to relief under 28 U.S.C. § 2255.

## III. JAVIDAN'S SECOND MOTION FOR LEAVE TO AMEND SECTION 2255 MOTION

On August 4, 2017, Javidan filed a second Motion for Leave to Amend her Section 2255 Motion. (Doc # 238; Doc # 239) She relies solely on the Supreme Court's June 2017 decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

"A new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The Supreme Court in *Honeycutt* did not make its ruling retroactive to cases on collateral review. Accordingly, the Court denies Javidan's Motion for Leave to Amend her Section 2255 Motion a second time. *See* 28 U.S.C. §§ 2255(h)(2), 2255(f)(3).

## IV. CERTIFICATE OF APPEALABILITY

Rule 22 of the Federal Rules of Appellate Procedure provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253(c)(2). Rule 11 of the Rules Governing Section 2255 Proceedings requires that a district court issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a court issues a certificate of appealability, the court must state the specific issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). 28 U.S.C. § 2255(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

A certificate of appealability will not be issued in this case because, as discussed above, the arguments raised by Javidan in her Section 2255 Motion are without merit.

## V. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Mehran Javidan's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 11-20052, Doc # 204, filed November 8, 2016]** is **DENIED**.

IT IS FURTHER ORDERED that Defendant Mehran Javidan's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 11-20052, Doc # 217, filed February 27, 2017]** is **DENIED**.

IT IS FURTHER ORDERED that Defendant Mehran Javidan's Motion for Leave to Amend 2255 Motion **[Criminal Case No. 11-20052, Doc # 238, filed August 4, 2017]** and Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 11-20052, Doc # 239, filed August 4, 2017]** are **DENIED**.

IT IS FURTHER ORDERED that Defendant Mehran Javidan's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Civil Case No. 16-13974]** is **DISMISSED with prejudice.** The case is designated as **CLOSED** on the Court's docket.

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

Dated: August 23, 2017                    s/Denise Page Hood
                                          Chief, U.S. District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2017, by electronic and/or ordinary mail.

                                          s/Julie Owens
                                          Acting in the absence of  LaShawn R.Saulsberry
                                          Case Manager